UNION COUNTY CHILD WELFARE BOARD, APPELLEE, *v.* PARKER, APPELLANT; BENDLER, APPELLEE.

[Cite as Union County Child Welfare Bd. v. Parker, 7 Ohio App. 2d 79.]

(No. 302—Decided July 3, 1964.)

*Mr. Robert O. Hamilton,* prosecuting attorney, for appellee Union County Child Welfare Board.
*Mr. John W. Dailey, Jr.,* for appellant.

GUERNSEY, J.  This is an appeal on questions of law by Robert Parker from a judgment of the Juvenile Court of Union

County placing the permanent custody of his children, Ronald Gene Parker and Robert Charles Parker, Jr., in the Union County Child Welfare Board.

An examination of the record reveals that the parents of these children were divorced and have since married other spouses; that pursuant to the order of the Common Pleas Court of Union County in the divorce action custody of both children was originally placed in the mother, which custody was later modified on November 9, 1961, by being made subject to the condition that the children physically remain in the home of Mabel Paver, their paternal grandmother. Thereafter, on September 11, 1962, the Common Pleas Court certified the matter of custody and support of these children to the Juvenile Court, with its consent.

On December 6, 1962, the grandmother filed the following motion in the Juvenile Court:

"Now comes Mabel Paver and states to the court she has had physical custody of the children of the parties since order of the Common Pleas Court November 9, 1962 [sic].

"Mabel Paver further states that she is at the present time unable to control Ronald Gene Parker and that neither parent is a suitable person to have the care and custody of said child.

"Wherefore the court is asked to determine and award the future care and custody of said child."

No other documents (including complaints, citations, or process) respecting the custody of these children were filed in Juvenile Court between September 11, 1962, and December 19, 1962, on which date was filed a journal entry of the Juvenile Court placing the two children in the temporary custody of the Union County Child Welfare Board, after first reciting and finding as follows:

"This day this cause came on for hearing before the court and personally appeared Mable [sic] Paver, Robert Charles Parker, and Marilyn Jean Bendler, father and mother of Ronald Gene Parker, age 9 years on September 9, 1962 and Robert Charles Parker, Jr., age 4 years on August 27, 1962.

"The court having heard the testimony and investigations of the Child Welfare Board of Union County finds that Ronald Gene Parker and Robert Charles Parker, Jr., are neglected and

dependent children and that the mother and father are each unable, at this time to provide a suitable home for said children.''

On November 14, 1963, the child welfare board petitioned the court to have the temporary custody of the children made permanent in the board, and after hearing, by its judgment entered December 17, 1963, the petition was granted and permanent custody ordered. This judgment was vacated by the court on December 17, 1963, and rehearing ordered. Following rehearing, the court on January 10, 1964, entered its judgment awarding permanent custody to the child welfare board. This latter judgment is the one from which this appeal is taken.

The judgment appealed from recites the finding of dependency and neglect of December 19, 1962, but does not make any finding of dependency and neglect as of any later date. The bill of exceptions of the rehearing held on January 9, 1964, contains insufficient evidence to support a finding of dependency or neglect as of the time of rehearing, which insufficiency counsel concede.

Appellant's assignments of error are to the effect that the Juvenile Court committed error (1) in placing on the appellant the burden of proving that some change had occurred after December 19, 1962, whereby the children were no longer dependent and neglected, and (2) in granting permanent custody of the children to the child welfare board without requiring it to establish that the children were dependent or neglected at the time of the order granting permanent custody. In our view of this case the record will not permit us to determine either of these assignments of error.

Assuming, without deciding, that the same finding and determination of dependency or neglect which supports an order of temporary custody may also, without other evidence of dependency or neglect, support a subsequent order of permanent custody, this result could occur only if the first finding, determination and order is not a void order.

The record shows that, notwithstanding that the matter of custody of both children had been certified to the Juvenile Court by the Common Pleas Court, the orders in question here do not involve merely the question of custody as between parents or,

for that matter, even relatives, but involve the matter of the award of temporary or permanent custody following a determination of dependency or neglect.

As related to the facts in this case, Section 2151.27, Revised Code, provides:

"Any person having knowledge of a child under eighteen years of age who appears to be * * * neglected, or dependent, * * * may, with respect to such * * * neglected, or dependent child, file a sworn complaint, * * * in the Juvenile Court of the county in which such child has a residence or legal settlement, or in which such * * * neglect, or dependency occurred, * * *. Such * * * sworn complaint may be upon information and belief and * * * shall be sufficiently definite by using the word * * * neglected, dependent, * * * as the facts may be."

In the case of *State, ex rel. Clark,* v. *Allaman, Supt.* (1950), 154 Ohio St. 296, which still expresses the law of Ohio, the Supreme Court held:

"1. The provision of Section 10512-21, General Code (part of the Adoption Code), that 'if for any reason whatsoever the petition shall be dismissed or the court shall deny or revoke its interlocutory order of adoption or deny a final decree of adoption * * * the cause shall be certified to the Juvenile Court of the county where the child is then residing for appropriate action and disposition by such court,' authorizes and requires the Juvenile Court, upon receiving such certification, to make proper investigation within its statutory jurisdiction to determine who has the responsibility for the care of such child.

"2. The certification of a cause from the Probate Court to the Juvenile Court under the provisions of Section 10512-21, General Code, does not constitute a complaint against the parents that the child which was the subject of the adoption proceedings is a dependent, delinquent or neglected child, and a judgment by the Juvenile Court finding that such child is a dependent child, made without the filing of a complaint against the parents, is void *ab initio* for lack of jurisdiction."

Judge Faught, in his opinion unanimously concurred in, further said, at page 302:

"* * * The charges a parent is required to defend must be certain and definite, and the serving of a citation upon a par-

ent in a case in which there has been no complaint does not supply such deficiency. The General Assembly intended that the natural right of parents to their children should be protected and set forth specifically those instances in which the Juvenile Court has the power to deprive parents of their children.

"It is a basic requirement that a case cannot be instituted in a court of record without a proper pleading being filed requesting service of summons on those persons who are to be brought within the jurisdiction of the court for the proper disposition of that case."

The *Allaman* case differs from the case before us only in that the matter of the custody of the child there involved was certified by the Probate Court to the Juvenile Court, whereas here the matter of the custody of children was certified by the divorce court to the Juvenile Court. The motion here of Mabel Paver, which was the only filing leading to the determination of dependency and neglect of both children and the order of temporary custody filed on December 19, 1962, did not constitute a complaint of dependency or neglect. A charge that "neither parent is a suitable person to have the care and custody of said child" does not constitute a charge that the child is "neglected," as defined by Section 2151.03, Revised Code, or "dependent," as defined by Section 2151.04, Revised Code. Although Section 2151.27, Revised Code, prescribes that a charge made by using the words "neglected" or "dependent" shall be sufficiently definite, the words, "unsuitable parent," are not necessarily related to dependency or neglect and, if related, are not sufficiently definite to show whether it is a claim of dependency, or neglect, or both.

Although our judgment on this appeal is based solely on the lack of a proper complaint, it is well also to note that the motion which was filed related to only one of the two children; no citations were served on the parents, nor was there any finding that the parents voluntarily appeared in court, all of which would further have vitiated the proceedings had they been otherwise properly initiated.

It is, therefore, our opinion and judgment that the proceedings wherein it was determined that the children were dependent and neglected, and ordered placed in the temporary

custody of the child welfare board were void *ab initio* for the want of a complaint filed as prescribed by Section 2151.27, Revised Code, that such void proceedings could not be the foundation for and the determination of dependency or neglect necessary to support the subsequent proceedings resulting in the judgment and order of January 10, 1964, appealed herein, and that for such reason the order thus appealed must be reversed and vacated at the costs of the appellee child welfare board. The order appealed from being reversed and vacated and there being no valid and enforcible order of the Juvenile Court relating to the custody of these children, their custody is determined by the custody order of the Common Pleas Court last entered prior to the certification of the matter of their custody to Juvenile Court.

*Judgment reversed.*

MIDDLETON, P. J., and YOUNGER, J., concur.