[Cite as *In re T.A.M.*, 2018-Ohio-5058.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN RE:

        T.A.M.,

**ADJUDICATED DEPENDENT CHILD.**

[NATHAN MCIE - APPELLANT]

CASE NO. 3-18-13

**O P I N I O N**

Appeal from Crawford County Common Pleas Court
Juvenile Division
Trial Court Nos. C 2165118 and F 2185059

**Judgment Affirmed**

**Date of Decision: December 17, 2018**

**APPEARANCES:**

    *Adam Charles Stone* **for Appellant**

    *Michael J. Wiener* **for Appellee**

**PRESTON, J.**

{¶1} Appellant, Nathan McIe ("McIe"), appeals the June 8, 2018 decision of the Crawford County Court of Common Pleas, Juvenile Division, awarding permanent custody of his minor child, T.A.M., to Crawford County Job and Family Services (the "agency"). For the reasons that follow, we affirm.

{¶2} McIe is the adoptive father and sole parent of T.A.M. (*See* Case No. F2185059, Doc. No. 5). On November 18, 2016, T.A.M. reported that he had been sexually abused by McIe. (*See* Case No. C2165118, Doc. No. 22). McIe was subsequently arrested and charged with three counts of rape and one count of disseminating matter harmful to juveniles. (*Id.*). (*See* Case No. F2185059, Doc. No. 5, State's Ex. 2). McIe remained in the Crawford County Jail throughout the pendency of the majority of T.A.M.'s case. (*See* Case No. F2185059, Doc. No. 5, State's Ex. 3).

{¶3} On November 22, 2016, the agency filed a complaint under R.C. 2151.27(A)(1) alleging T.A.M. to be an abused child. (*See* Case No. C2165118, Doc. No. 1). In its complaint, the agency requested that the trial court grant it temporary custody of T.A.M. (*Id.*). That same day, the trial court appointed a guardian ad litem ("GAL") for T.A.M. (*See* Case No. C2165118, Doc. No. 5).

{¶4} At a hearing on December 20, 2016, the agency orally moved to amend the complaint from alleging that T.A.M. is an abused child to alleging that T.A.M.

is a dependent child. (*See* Case No. C2165118, Doc. No. 11). The trial court granted the agency's motion and amended the complaint to allege that T.A.M. is a dependent child. (*Id.*). At the December 20, 2016 hearing, McIe entered an admission to the allegations of the amended complaint and stipulated that sufficient evidence existed for an adjudication of dependency; the trial court then adjudicated T.A.M. to be a dependent child under R.C. 2151.04(C). (*Id.*). In addition, the trial court granted the agency temporary custody of T.A.M. (*Id.*).

{¶5} On May 11, 2017, the trial court approved the agency's case plan regarding T.A.M. and incorporated that plan into its entry. (Case No. C2165118, Doc. No. 22). On November 21, 2017, the agency filed a motion requesting that the trial court grant an extension of the agency's temporary custody over T.A.M. and approve an amendment to the case plan. (Case No. C2165118, Doc. No. 27). That same day, the trial court granted the agency's motion, extended the agency's temporary custody of T.A.M., and approved and adopted the amendment to the case plan. (Case No. C2165118, Doc. No. 28).

{¶6} On February 12, 2018, McIe pleaded guilty to one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04, a third-degree felony, and one count of felonious assault in violation of R.C. 2903.11, a second-degree felony.[1]

---

[1] Pursuant to plea negotiations, the State amended two of the counts of rape in the indictment to one count of unlawful sexual conduct with a minor and one count of felonious assault. (*See* Case No. F2185059, Doc. No. 5, State's Ex. 2). In addition, the State agreed to dismiss one of the counts of rape as well as the count of disseminating matter harmful to juveniles. (*See id.*).

(*See* Case No. F2185059, Doc. No. 5, State's Ex. 2). That same day, the Crawford County Court of Common Pleas sentenced McIe to an aggregate term of five years' imprisonment. (*See* Case No. F2185059, Doc. No. 5, State's Ex. 1). McIe later stipulated that the crimes to which he pleaded guilty were committed against T.A.M. (*See* Case No. F2185059, Doc. No. 5).

{¶7} On April 30, 2018, the agency filed a motion for permanent custody of T.A.M. (Case No. F2185059, Doc. No. 1). The motion also included a request for the trial court to approve and adopt a second amendment to the case plan. (*Id.*). On June 5, 2018, T.A.M.'s GAL filed his report recommending that the trial court award permanent custody of T.A.M. to the agency. (Case No. F2185059, Doc. No. 5). Following a June 5, 2018 hearing, the trial court granted permanent custody of T.A.M. to the agency and approved and adopted the second case plan amendment on June 8, 2018. (Case No. F2185059, Doc. No. 6).

{¶8} On June 12, 2018, McIe filed a notice of appeal. He raises one assignment of error.

### Assignment of Error

**Crawford County Job and Family Services Did Not Comply with Statutory and Administrative Requirements in Its Ongoing Reasonable Efforts to Reunify the Minor Child, T.A.M. (date of birth: * * *, 2004) with his Parents.**

{¶9} In his assignment of error, McIe argues that the trial court erred by awarding permanent custody of T.A.M. to the agency. Specifically, McIe argues

that the agency "failed to exercise reasonable efforts to reunify the family as required by law," "failed to consider a relative placement in whose home the child resided and with whom the child had a previous relationship," and "failed to provide case plan services, a home study or even a background check on a suitable alternative placement." (Appellant's Brief at 11). McIe concludes that the agency's "failure to make such inquiries and provide services is demonstrative of its failure to make reasonable efforts for reunification." (*Id.*).

{¶10} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53 and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶11} "R.C. 2151.414 outlines the procedures that protect the interests of parents and children in a permanent custody proceeding." *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, ¶ 12, citing *In re*

*B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26. "When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, citing *In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. "R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child." *In re Y.W.*, 3d Dist. Allen No. 1-16-60, 2017-Ohio-4218, ¶ 10, citing *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10 and *In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to [R.C. 2151.414(A)], by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * *:
>
> (a)    The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period *

* *.

R.C. 2151.414(B)(1)(a), (d). "Specifically concerning R.C. 2151.414(B)(1)(a), '[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.'" *In re A.M.* at ¶ 13, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

{¶12} R.C. 2151.414(E) provides, in relevant part:

In determining at a hearing held pursuant to [R.C. 2151.414(A)] * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by

clear and convincing evidence, at a hearing held pursuant to [R.C. 2151.414(A)] * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

* * *

(3) The parent committed any abuse as described in [R.C. 2151.031] against the child, caused the child to suffer any neglect as described in [R.C. 2151.03], or allowed the child to suffer any neglect as described in [R.C. 2151.03] between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

* * *

(5) The parent is incarcerated for an offense committed against the child * * *;

* * *

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(b)   An offense under [R.C. 2903.11] * * * and the victim of the

offense is the child * * *;

* * *

(d)   An offense under * * * [R.C. 2907.04] * * * and the victim of

the offense is the child * * *;

* * *

(12) The parent is incarcerated at the time of the filing of the motion

for permanent custody * * * and will not be available to care for the

child for at least eighteen months after the filing of the motion for

permanent custody * * *.

R.C. 2151.414(E)(3), (5), (7)(b), (d), (12).

**{¶13}** "'If the trial court determines that any provision enumerated in R.C. 2151.414(B)(1) applies,' it must proceed to the second prong of the test, which requires the trial court to 'determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest.'" *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38 and 9-15-39, 2017-Ohio-142, ¶ 23, quoting *In re A.F.* at ¶ 55 and citing R.C. 2151.414(B)(1). "The best interest determination is based on an analysis of R.C. 2151.414(D)." *Id.*

**{¶14}** "Under R.C. 2151.414(D)(1), the trial court is required to consider all relevant factors listed in that subdivision, as well as any other relevant factors." *Id.*

at ¶ 24, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12 and 8-13-13, 2014-Ohio-755, ¶ 27. The R.C. 2151.414(D)(1) factors include:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1). "Under this test, the trial court considers the totality of the circumstances when making its best interest determinations. No single factor is

given more weight than others." *In re N.R.S.*, 2018-Ohio-125, at ¶ 16, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶15} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶16} McIe does not appear to challenge any of the trial court's findings under R.C. 2151.414. Instead, McIe argues that the trial court erred by granting permanent custody of T.A.M. to the agency because the trial court erroneously concluded that the agency used reasonable efforts to reunify the family by placing T.A.M. with T.A.M.'s paternal grandmother, Iva McIe ("Iva"). (Appellant's Brief at 8-12). However, McIe's argument is misplaced. "[A] trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the

agency has not established that reasonable efforts have been made prior to the hearing." (Emphasis sic.) *In re N.R.S.* at ¶ 25, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414). In this case, the trial court made reasonable-efforts findings both at the time that the agency was awarded temporary custody of T.A.M. and at the time that the agency was granted an extension of temporary custody over T.A.M., and McIe does not offer argument or evidence refuting these findings. (*See* Case No. C2165118, Doc. Nos. 11, 28). As a result, the trial court was not required to make reasonable-efforts findings at the permanent custody hearing before awarding permanent custody of T.A.M. to the agency.[2]

**{¶17}** Nevertheless, although he does not frame his arguments as such, we interpret McIe's arguments as challenging the trial court's best-interest findings under R.C. 2151.414(D)(1)(d). That is, McIe's arguments raise the question of whether the trial court properly considered T.A.M.'s need for a legally secure permanent placement and whether that type of placement could be achieved without

---

[2] Even if the trial court had been required to make reasonable-efforts findings at the permanent custody hearing, it is far from certain that the agency's efforts to place T.A.M. with Iva, or lack thereof, would have been relevant to its reasonable-efforts findings. *See In re M.O.*, 4th Dist. Ross No. 10CA3189, 2011-Ohio-2011, ¶ 16 ("[A] public children services agency has no statutory duty to make 'reasonable efforts' to place the child with an extended family member before it can obtain permanent custody of the child."), citing *In re Warren*, 5th Dist. Stark No. 2007CA00054, 2007-Ohio-5703, ¶ 21-23.

a grant of permanent custody to the agency—specifically, by awarding custody of T.A.M. to Iva. *See In re A.R.*, 4th Dist. Highland No. 14CA10, 2014-Ohio-4916, ¶ 20-25. Accordingly, while McIe does not explicitly set forth a best-interests argument, we will consider whether clear and convincing evidence supports the trial court's R.C. 2151.414(D)(1)(d) findings.

{¶18} With respect to R.C. 2151.414(D)(1)(d), the trial court found that in "the course of [McIe's] companion criminal proceedings[,] the caseworker solicited from [McIe] names of relatives or other interested persons who would be willing to assume a long-term placement of [T.A.M.]" (Case No. F2185059, Doc. No. 6). The trial court also found that the caseworker contacted the persons suggested by McIe but that they "never followed through for the necessary physical home evaluation, a criminal records check and a child welfare FACSIS check." (*Id.*). As to potential placement with Iva, the trial court found that due to "a previous substantiated child welfare case[,] [Iva] was excluded from consideration." (*Id.*). Based on these findings, the trial court concluded that "no relative or other interested person has been identified as properly suitable to assume the long-term placement of the child and * * * that it would be in the best interests of [T.A.M.] to grant permanent custody as a legally secure permanent placement cannot be achieved without a grant of permanent custody * * *." (*Id.*).

{¶19} We find that clear and convincing evidence supports the trial court's conclusion that a legally secure permanent placement for T.A.M. could not be achieved without a grant of permanent custody to the agency. At the permanent custody hearing, Brook Rachel ("Rachel"), an ongoing caseworker with the agency, testified that after being removed from McIe's custody, T.A.M. was initially placed with a foster parent but that he was removed from the foster home after less than a month and placed at Boys Village "[d]ue to his sexual behaviors." (June 5, 2018 Tr. at 7-8). Rachel stated that although T.A.M. continued to undergo counseling and therapy at Boys Village, "he [had not] been making much progress" and "[h]e continue[d] to have sexual acting out behaviors with other peers, [and said] things that [were] inappropriate to peers and staff." (*Id.* at 8). She testified that during the entirety of T.A.M.'s stay at Boys Village, he only had contact with one family member, Iva, on one occasion. (*Id.*). According to Rachel, on the day T.A.M. saw Iva, he did not want to "comply with the therapy and counseling on that day" and he had "a lot of behaviors" including "[c]ontinued sexual acting out." (*Id.* at 8-9).

{¶20} In addition, Rachel testified that McIe suggested four potential placements for T.A.M.—Ellen Gregory, Gina Gregory, Gartrell McIe, and Iva. (*Id.* at 9). She stated that the agency did not establish contact with either of the Gregorys or with Gartrell McIe. (*Id.* at 9-10). As to potential placement with Iva, Rachel testified that although Iva requested that she be considered as a placement for

T.A.M., the "agency [was] unable to approve her due to her substantiated case in regards to this ongoing case." (*Id.* at 10). Finally, she testified that there were no other placements available for T.A.M. at the time of the permanent custody hearing and that she did not believe that it was possible for T.A.M. to have a legally secure placement without granting permanent custody to the agency. (*Id.*).

{¶21} On cross-examination, Rachel agreed with McIe's counsel's assertion that the agency was required to use reasonable efforts to "maintain the child in the home" and to "keep the child with the family, if possible." (*Id.* at 11). She stated that when T.A.M. was removed from McIe's custody, McIe, Iva, and T.A.M. were all residing in the same home. (*Id.* at 13). Rachel testified that the agency did not conduct a home study on Iva, did not run a background check on Iva, and did not provide Iva with any services under the case plan. (*Id.* at 12). She confirmed that Iva was excluded as a potential placement for T.A.M. due to substantiated allegations arising from T.A.M.'s case. (*Id.*). Rachel stated that although Iva attempted to contact the agency, the agency did not provide services, assessments, or referrals for Iva. (*Id.* at 12, 14).

{¶22} Rachel reiterated that T.A.M. had not made much progress at Boys Village, that he continued to act out in a sexual manner, and that Boys Village had reported that T.A.M. was "very off" the day he saw Iva. (*Id.* at 14-15). Regarding T.A.M.'s prospects for adoption, Rachel testified that the agency's

"recommendation is always for * * * the child to complete the program that they're in before [it] would look." (*Id.* at 15). According to Rachel, completing the program at Boys Village "would be the best opportunity for [T.A.M.] so he can learn his coping skills on everything that's happened to him." (*Id.*). Although Rachel conceded that T.A.M. was not taking full advantage of the programs at Boys Village and that he "still ha[d] behaviors," she remarked that granting permanent custody to the agency so that he could continue to receive services at Boys Village was in T.A.M.'s best interest because the agency "[did not] know what [was going to] happen after right now." (*Id.* at 15-16). Rachel further testified that, even given additional time to set up referrals for Iva, the agency would not place T.A.M. with her under any circumstances because "[s]he had a substantiated case in 2016 with sexual allegations with [T.A.M.], and it was substantiated." (*Id.* at 16). Finally, when asked whether there were any circumstances under which the agency "would * * * attempt to reunify [T.A.M.] with the home that he came from," Rachel responded, "[N]o." (*Id.*).

{¶23} On examination by T.A.M.'s GAL, Rachel testified that T.A.M. was removed from the home because McIe was the sole custodial parent of T.A.M. and Iva did not have custody of T.A.M. (*Id.* at 17). She testified that regardless of the fact that T.A.M. was also living with Iva at the time he was removed, he would have been removed because McIe was T.A.M.'s only residential parent. (*Id.*). Rachel

also stated that she believed that other children had been removed from Iva's home and that she believed that those children were under Iva's care and custody at the time of their removal. (*Id.* at 17-18).

{¶24} Furthermore, Rachel testified that despite T.A.M.'s lack of progress in the program, it would be in his best interest to remain in the program. (*Id.* at 18). Rachel agreed with T.A.M.'s GAL's assessment that removing him from the program and placing him "back home" would "be setting him up to fail most likely because of his behaviors[,] * * * he would offend on someone." (*Id.*). Rachel testified that the fact that T.A.M. had not successfully completed the program did not mean that he could not complete the program. (*Id.*). Although she could not speculate on T.A.M.'s chances of being adopted, she opined that T.A.M. would have a greater chance of being adopted if the agency gained permanent custody over him so that he could complete the program at Boys Village. (*Id.* at 20-21).

{¶25} On re-cross-examination, Rachel testified that she believed that other children had been removed from Iva's care and custody but that she could not remember with certainty the year in which the children were removed. (*Id.* at 22). She identified the two children but "could not tell * * * why they were removed." (*Id.*). Rachel testified that she only knew that two children were removed from the home but she could not state why they were removed or whether Iva was at fault. (*Id.* at 23). She further testified that T.A.M. continued to have "sexual behaviors"

at Boys Village despite being in the program since December 2016. (*Id.*). However, she declined to "say that [T.A.M. was] failing at the program." (*Id.* at 24). Instead, she characterized T.A.M.'s progress as follows: "He has done * * * some counseling, he's done some therapy. He's kind of back and forth. He will go some way and make progress and then he'll go backwards, and then he'll make some progress and then he won't." (*Id.*).

{¶26} Therefore, the record establishes that the agency and the trial court considered a slate of alternative placements for T.A.M. in lieu of permanent custody. First, the record demonstrates that three suggested relative placements were excluded from consideration due to their failure to establish contact with the agency. Furthermore, the record supports that Iva was not a suitable candidate for placement of T.A.M. due to previous exclusionary contact with the agency and substantiated allegations arising out of the same case that necessitated T.A.M.'s removal from McIe's custody. Finally, it is clear that, despite T.A.M.'s lack of progress in the program at Boys Village, granting permanent custody to the agency in order to allow T.A.M. to complete the program affords him the best chance of eventually settling into a safe, stable, and secure home environment. Removing T.A.M. from the program and placing him with Iva would deprive him of much-needed therapeutic resources and would likely frustrate the efforts to help T.A.M. cope with the abuse inflicted on him by McIe. In sum, clear and convincing

evidence supports the trial court's conclusion that a legally secure permanent placement for T.A.M. could not be achieved without a grant of permanent custody to the agency.

**{¶27}** McIe's assignment of error is overruled.

**{¶28}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**