**[Cite as *In re J.R.*, 2009-Ohio-4113.]**

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**MARION COUNTY**

IN THE MATTER OF:

    **J. R.,**

**[DANNY MUNDY, APPELLANT].**

**CASE NO. 9-09-05**

**O P I N I O N**

IN THE MATTER OF:

    **T. M.,**

**[DANNY MUNDY, APPELLANT].**

**CASE NO. 9-09-06**

**O P I N I O N**

IN THE MATTER OF:

    **D. M., III**

**[DANNY MUNDY, APPELLANT].**

**CASE NO. 9-09-07**

**O P I N I O N**

IN THE MATTER OF:

    **L. M.,**

**[DANNY MUNDY, APPELLANT].**

**CASE NO. 9-09-08**

**O P I N I O N**

IN THE MATTER OF:

    **E. M.,**

**[DANNY MUNDY, APPELLANT].**

**CASE NO. 9-09-09**

**O P I N I O N**

Case No. 9-09-05, 06, 07, 08, 09

**Appeal from Marion County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2006 AB 50, 2006 AB 51, 2006 AB 52,**
**2006 AB 71, 2006 AB 122**

**Judgments Affirmed**

**Date of Decision:   August 17, 2009**

**APPEARANCES:**

   *Keith A. Kochheiser*  **for Appellant**

   *James P. Luton*  **for Appellee**

   *Douglas B. Diequez,* **Guardian Ad Litem**

**SHAW, J.**

   **{¶1}**   Father-appellant, Danny K. Mundy, appeals five judgments rendered on February 4, 2009, by the Court of Common Pleas, Family Division, of Marion County, Ohio, granting permanent custody of J.R., T.M., D.M., and L.M. to Marion County Children's Services ("MCCS") and granting legal custody of E.M. to his paternal grandmother, Sheila Riggenbach.

**{¶2}** The facts relevant to this appeal are as follows. Four of the children at issue in this appeal, T.M., D.M., L.M., and E.M., are the biological children of Elizabeth Rogers and the appellant, Danny Mundy. J.R. is the biological child of Elizabeth Rogers and Joshua Bonham.[1] J.R. has autism. T.M. and D.M. were born with a condition known as Treacher Collins syndrome. As a result of this condition, both children require the use of a tracheal tube to maintain their breathing, they have difficulty walking and communicating, and D.M. also has a feeding tube. These two children also have nurses to help in their daily care.

**{¶3}** On May 19, 2006, MCCS filed a complaint alleging that J.R., born July 15, 2000, was abused, neglected, and dependent.[2] That same day, the agency filed two additional complaints, one for T.M., born May 9, 2002, and one for D.M., born May 18, 2004, alleging those children were dependent and neglected. These complaints were based upon allegations that their mother, Elizabeth Rogers, allowed her father, a known sex offender, unsupervised access to J.R. During this time, her father sexually assaulted J.R.

**{¶4}** Three days before MCCS filed its complaints, Rogers gave birth to L.M. However, MCCS did not file a complaint for abuse, neglect, and/or dependency for L.M. Upon agreement of the parties, J.R. was adjudicated abused

---

[1] Bonham was served by publication but did not enter any appearance for the proceedings nor did anyone on his behalf. The mother testified that she had not had any contact with Bonham since J.R. was six months old.

[2] Throughout the proceedings in all five cases, MCCS would dismiss its complaints and re-file and/or amend the complaints due to various statutory time restrictions. However, the substance of these complaints remained consistent.

and dependent, and T.M. and D.M. were adjudicated dependent on June 15, 2006. All three were left in the care of their mother and placed under protective supervision. Although placed in their mother's care, the appellant also lived in the home with Rogers and the children.

{¶5} On July 27, 2006, MCCS filed an additional complaint, alleging that L.M. was abused, neglected, and dependent. This complaint was based on an incident that occurred on July 1, 2006, wherein L.M. suffered from Shaken Baby syndrome, causing a left brain subdural hematoma, several broken ribs, and a blown retina. Tests also showed L.M. had a fractured femur, which was already healing.

{¶6} The following day, on July 28, 2006, pursuant to an agreement by Rogers and the appellant, T.M. and D.M. were placed in the physical custody of their nurses, Kay Hout and Anita "Jodi" Smith. However, J.R. was left in the care of Rogers, and the three children were kept under protective supervision. Upon her release from the hospital, L.M. was placed in the temporary custody of MCCS and placed into foster care because the perpetrator of the abuse upon L.M. had yet to be determined.[3]

---

[3] The investigation never revealed who the actual perpetrator was. Rogers suspected that while she was sleeping, J.M. caused the injuries. Both J.M. and Rogers were home at the time. In addition, Jodi Smith, testified that when she arrived at the home on the day L.M. was injured, she saw the appellant knocking on the door of a neighbor. The appellant testified that he was not in the room when L.M. was injured. Smith further testified that she told Rogers to call 911 because she could immediately tell L.M. was critical but that Rogers did not make the call. Instead Rogers and the appellant eventually drove L.M. to the hospital.

{¶7} On August 15, 2006, MCCS filed for emergency orders for T.M. and D.M. based upon information received from the local sheriff's department that the parents failed to provide a safe environment for the children by allowing J.R. to throw ("airborne") and push his medically fragile siblings in a rough manner. These orders were granted the following day, and emergency placement of T.M. was given to Jodi Smith and emergency placement of D.M. was given to Kay Hout.

{¶8} L.M. was found to be abused and dependent on April 17, 2007. MCCS later filed a motion for temporary custody of J.R., T.M., and D.M., which was granted on June 6, 2007. Shortly thereafter, J.R. was placed in the therapeutic foster home of Charity Slaughter. Eventually, both T.M. and D.M. were placed in the home of Jodi Smith.

{¶9} On October 25, 2007, Rogers gave birth to E.M. The following day, MCCS filed an ex parte motion for emergency custody of E.M., which was granted. Thereafter, MCCS filed a complaint, alleging that E.M. was a dependent child. The basis for this complaint was the prior history of the family with MCCS, wherein the other four children were found to be dependent children and two of them were additionally found to be abused children. Temporary custody of E.M. was granted to MCCS, and he was placed in the care of Jodi Smith.

{¶10} The appellant later filed a motion for kinship placement of E.M. with the appellant's mother, Sheila Riggenbach. On February 5, 2008, the parties agreed to terminate MCCS' temporary custody of E.M. and to grant temporary custody of E.M. to his paternal grandmother.[4] Two days later, E.M. was placed with his grandmother.

{¶11} On April 14, 2008, MCCS filed motions for permanent custody of J.R., T.M., D.M., and L.M. MCCS also filed an amended complaint, alleging E.M. was dependent and requesting that permanent custody of E.M. be granted to the agency that same date.

{¶12} On June 30 and July 1, 2008, the trial court held an adjudicatory hearing for E.M. and a permanent custody hearing for the other four children. On August 12, 2008, the paternal grandmother filed a motion to be made a party to E.M.'s case and a motion for legal custody of E.M. The grandmother's motion to be made a party was granted on September 25, 2008.

{¶13} The trial court found E.M. to be a dependent child on September 17, 2008. A dispositional/permanent custody hearing for E.M. was held on September 30, 2008. At the permanent custody hearing for the children, MCCS presented testimony and exhibits regarding two psychological examinations of the appellant, which noted his mental health issues and substance and alcohol abuse. The agency also presented the testimony of foster parents for the children, three of the

---

[4] This agreement was adopted by the trial court and journalized on February 20, 2008.

caseworkers assigned to the children, and one of L.M.'s nurses. The court also heard testimony from the parents, the maternal and paternal grandmothers, the appellant's sister, and one of the nurses for T.M. and D.M.

{¶14} On February 4, 2009, the trial court granted permanent custody of the four oldest children to MCCS. The trial court also granted legal custody of E.M. to his paternal grandmother.

{¶15} The father-appellant now appeals these five judgments, asserting three assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT COMMITTED REVERSABLE [*sic*] ERROR WHEN IN ACCORDANCE WITH OHIO REVISED CODE 2151.414, IT FAILED TO CONSIDER ALTERNATE PLACEMENT RATHER THAN PERMANENT CUSTODY.**

## ASSIGNMENT OF ERROR NO. 2

**THE DECISION OF THE TRIAL COURT IS IN ERROR WHEN [IT] FAILED TO FOLLOW ALL OF THE PROVISIONS OF 2151.414.**

## ASSIGNMENT OF ERROR NO. 3

**BY ITS OWN JUDGMENT ENTRY DATED SEPTEMBER 17, 2008, CONCERNING THE MINOR CHILD, ERIC [*sic*] JAY MUNDY, THE COURT MADE FINDINGS OF FACT THAT DO NOT INDICATE ANY REASON AS TO WHY THE FATHER SHOULD NOT HAVE THE CARE AND CUSTODY.**

*First Assignment of Error*

{¶16} In his first assignment of error, the appellant contends that the trial court erred by not considering alternate placement of the children rather than permanent custody. Initially, we note that this assignment of error concerns all five of the children. However, J.R. is not the biological or adopted child of the appellant. Further, the record is devoid of any motion filed on behalf of the appellant for custody of J.R. As such, he lacks standing to challenge the trial court's decision to grant permanent custody of J.R. to MCCS. Therefore, this assignment of error is overruled as to J.R. Further, the request by MCCS for permanent custody of E.M. was not granted. To the contrary, legal custody of E.M. was granted to his paternal grandmother. Accordingly, this assignment of error is overruled as moot as to E.M.

{¶17} In regards to the other three children, our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an 'essential' and 'basic' civil right. *In re Franklin*, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841, citing *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." *In re Hayes*, supra, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

{¶18} Additionally, the trial court is vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. *Blaker v. Wilhelm*, 6th Dist. No. WD-04-003, 2005-Ohio-317, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. As a trial court is in the best position to weigh witness credibility and evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion. *In re Rinaldi*, 3rd Dist. No. 1-02-74, 2003-Ohio-2562. Therefore, absent an abuse of that discretion, a trial court's decision regarding the allocation of parental rights and responsibilities must be upheld. *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id*. Therefore, it is within these constructs that we examine Appellant's first assignment of error.

{¶19} Before a juvenile court may terminate parental rights and award permanent custody of a child to a properly moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for

at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re D.M.*, 9th Dist. Nos. Civ.A. 22732, 22749, 2005-Ohio-6740 at ¶ 11, citing R.C. 2151.414(B)(1)(a) through (d) and (2); See also *In re William S.* (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738.

{¶20} In the case sub judice, the appellant contends that the trial court was required to consider alternate placement of the children rather than permanent custody pursuant to R.C. 2151.414. Although the appellant cites this section of the Revised Code, he provides no specific sub-section and/or division in support of his argument that the trial court must consider alternate placement. Rather, his argument relies upon R.C. 2151.412(F)(1)(a), which requires a case plan to have a goal "to achieve a safe out-of-home placement in the least restrictive, most family-like setting available and in close proximity to the home from which the child was removed[.]" He then asserts that the children were placed "all over central Ohio" and that this made visitation difficult.

{¶21} Our review of R.C. 2151.414, as previously outlined, reveals no requirement that the trial court favor alternate placement over awarding permanent custody. Further, even assuming arguendo that such a requirement exists, the

evidence before the trial court demonstrated that the three children at issue in this assignment of error, T.M., D.M., and L.M., each have serious, debilitating, and life-threatening medical conditions that require constant care. Their respective medical conditions necessitated specialized placement in homes where those responsible for their care understood their extreme needs and could meet those needs. In fact, R.C. 2151.412(F)(1)(a) specifically requires that the goal of achieving a safe out-of-home placement be "consistent with the best interest and special needs of the child[.]" Therefore, MCCS placed these children with people who not only were trained and experienced in handling medically fragile children but who also knew these children prior to placement in their respective homes.

{¶22} In this case, the paramount concern was the physical safety of the children, as their very survival depended upon it. Thus, no error occurred in the placement of the children. Moreover, the record before the court amply supports the trial court's decision to grant permanent custody of the children. The witnesses testified about the psychological problems, poor parenting skills, and impaired judgment of the appellant, and the defiant and belligerent attitude the appellant has with others regarding the medical treatment of his children. Given the intense medical needs of the children, the court did not abuse its discretion in finding by clear and convincing evidence that both prongs of the permanent custody test were satisfied. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶23}** The appellant contends in his second assignment of error that the trial court erred by not following the mandates of R.C. 2151.414 in regards to E.M. In support of this contention, the appellant asserts that MCCS sought permanent custody of E.M., who has no medical problems and who was never in the care of his parents due to the issues with the other four children, and that the trial court failed "to consider not only the parents, but the extended family, so that the child could remain in a family like setting."

**{¶24}** While the appellant accurately states that MCCS requested permanent custody, the trial court denied this request. To the contrary, the trial court granted the motion of Sheila Riggenbach, the appellant's mother, to award legal custody of E.M. to her. In reaching this decision, the trial court found that the parents were not capable of caring for any child based on their past history, including the fact that E.M.'s sister, L.M., was born with no health problems but suffered abuse while in her parents' care and then they failed to provide immediate emergency attention to her. However, the court also found that continued parenting time between E.M. and his parents should occur and that legal custody to the paternal grandmother would adequately protect E.M. and provide for his need for permanency. Thus, the court concluded that E.M.'s best interests would be served by granting legal custody of E.M. to his grandmother, who had

temporary custody of him since he was four months old, and that such a decision would not terminate the parental rights of the appellant and Elizabeth Rogers.

**{¶25}** The record clearly demonstrates that the trial court considered both the parents and the extended family. In fact, E.M. was placed in the legal custody of his *paternal* grandmother. Thus, the trial court kept the child with his extended family. As such, the appellant has already received the result he now seeks through this assignment of error. Therefore, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶26}** In his third assignment of error, the appellant contends that the trial court erred by failing to indicate why the appellant should not have the care and custody of E.M. In support of this assertion, the appellant references the September 17, 2008 judgment of the trial court, finding E.M. to be a dependent child.

**{¶27}** Admittedly, this entry does not reference any direct findings as to the appellant. However, the appellant's assignment of error does not challenge the adjudication of dependency. Rather, he contends the court erred in not providing a reason as to why he was not given custody of E.M. at the disposition.

**{¶28}** After adjudicating E.M. to be dependent, the trial court held a dispositional hearing on E.M., which included MCCS' request for permanent

custody of him. This hearing was held on September 30, 2008, the same day as the continuation of the permanent custody hearing for the four older children. Prior to that time, the trial court received two days of testimony on the permanent custody motions for E.M.'s siblings. Also included in those previous two days of evidence was a substantial amount of testimony regarding E.M.

{¶29} At the conclusion of all the evidence regarding each of the five children, the trial court took the matters under advisement. In its February 4, 2009 decision, the trial court found that the parents were not capable of caring for any child based on their past history, including the fact that E.M.'s sister, L.M., was born with no health problems but suffered abuse while in her parents' care and then they failed to provide immediate emergency attention to her. The court also found that the parents could not assimilate the resources made available to them through counseling. In specifically addressing its concerns as to the appellant, the court found that the appellant was unable to focus, had past mental health problems and drug and alcohol issues, was in danger of relapsing, had weak parenting skills, had impaired judgment, lacked insight, and was resentful of authority and typically defiant and belligerent when told or asked to do anything regarding the medical treatment of his children. The court then held that notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be

placed outside the home, the parents failed continuously and repeatedly to substantially remedy these problems pursuant to R.C. 2141.414(E)(1).

{¶30} The court also found that the parents demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children pursuant to R.C. 2151.414(E)(4). Here, the court found that visitations were sporadic because of the parents' actions, including the appellant's decision to enroll in school an hour and a half away without a residence or dependable means of transportation.

{¶31} Despite these findings, the court also found that continued parenting time between E.M. and his parents should occur and that legal custody to the paternal grandmother would adequately protect E.M. and provide for his need for permanency. Thus, the court concluded that E.M.'s best interests would be served by granting legal custody of E.M. to his grandmother, and that such a decision would not terminate the parental rights of the appellant and Elizabeth Rogers.

{¶32} Notably, the appellant does not dispute these findings. Rather, he inaccurately maintains that no findings were made and, thus, the trial court failed to follow statutory mandates.[5] Not only were numerous findings made by the court in regards to the appellant and the court's decision to grant legal custody to

---

[5] Although the appellant states "[t]his was in error in failing to follow the statutes set forth above and must be reversed[,]" he fails to provide any statutory references in support of this statement. This failure makes it quite difficult to ascertain the exact nature of the alleged error purportedly committed by the trial court.

the paternal grandmother, as previously discussed, these findings were supported by the evidence before it.  Therefore, this assignment of error is overruled.

{¶33} For all of these reasons, the five judgments of the Marion County Common Pleas Court, Family Division, are affirmed.

*Judgments Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**