[Cite as *In re X.G.*, 2025-Ohio-4627.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# LOGAN COUNTY

IN RE:

    X.G.,

DEPENDENT CHILD.

[CHEYENNE O. - APPELLANT]
[BRENDON G. - APPELLANT]

CASE NO. 8-24-42

OPINION AND
JUDGMENT ENTRY

Appeal from Logan County Common Pleas Court
Family Court Division
Trial Court No. 21-CS-0041

**Judgment Affirmed**

**Date of Decision:  October 6, 2025**

APPEARANCES:

    *Alison Boggs* for Appellant, Cheyenne O.

    *William T. Cramer* for Appellant, Brendon G.

    *Samantha L. Blosser* for Appellee

**ZIMMERMAN, J.**

{**¶1**} Mother-appellant, Cheyenne O. ("Cheyenne"), and father-appellant, Brendon G. ("Brendon"), appeal the August 13, 2024 judgment of the Logan County Court of Common Pleas, Family Court Division, granting permanent custody of their minor child, X.G., to Logan County Children's Services (the "agency"). For the reasons that follow, we affirm.

{**¶2**} Cheyenne and Brendon are the biological parents of X.G., born in 2020. Cheyenne and Brendon have a history with the agency in that, on October 6, 2020, the agency was granted permanent custody of their son V.G. (born in 2018). Moreover, shortly after Cheyenne gave birth to X.G. in 2020, the agency opened a case involving X.G. due to concerns that Cheyenne may have been using drugs during her pregnancy. However, when Cheyenne and X.G. tested negative, the agency closed its case.

{**¶3**} On November 22, 2021, the agency received a report that Cheyenne was using drugs. During the agency's investigation, Cheyenne admitted to using methamphetamine and fentanyl—but denied having X.G. in her home at the time of use. On November 24, 2021, Cheyenne tested positive for methamphetamine and fentanyl. The parties agreed to place X.G. with kinship provider Denyse B. ("Denyse"). Thereafter, on November 29, 2021, Cheyenne again tested positive for fentanyl.

{¶4} On December 13, 2021, the agency filed a complaint in the trial court alleging X.G. to be a dependent child and requesting temporary custody of X.G. On December 16, 2021, the trial court found probable cause to believe that X.G. was a dependent child and granted the agency temporary custody of X.G. The trial court also appointed a guardian ad litem ("GAL") to represent X.G.[1]

{¶5} On January 14, 2022, the GAL filed a motion requesting that X.G. be placed in the temporary custody of the maternal grandmother. Following an adjudicatory hearing on March 8, 2022, the trial court adjudicated X.G. a dependent child and placed X.G. in the temporary custody of the maternal grandmother. After a dispositional hearing on April 7, 2022, X.G. remained in the temporary custody of the maternal grandmother and the trial court granted the agency protective supervision of the child.

{¶6} In July of 2022, the maternal grandmother suffered a stroke and X.G. was returned to kinship provider Denyse. Thereafter, in January of 2023, the agency learned of allegations of domestic violence involving the maternal grandmother and her live-in boyfriend. The agency then filed a motion requesting a change in temporary custody of X.G. due, in part, to the maternal grandmother's health issues and the allegations of domestic violence.

---

[1] The GAL appointed in this case is the same GAL who served in the agency's first case involving X.G. opened shortly after X.G.'s birth in 2020.

{¶7} In January of 2023, Cheyenne was arrested in Indiana and charged with "Unlawful Possession or Use of a Legend Drug, Level 6 Felony." (Mar. 8, 2024 Tr. at Ex. 3). On March 2, 2023, she entered a guilty plea to the charge and was sentenced to 76 days in jail.[2] Shortly after her release from jail, Cheyenne was charged with felony theft in Union County, Ohio, and illegal conveyance of drugs into a detention facility in Champaign County, Ohio.

{¶8} On March 13, 2023, the trial court held a hearing on the agency's motion to change temporary custody of X.G. At the time of the hearing, Cheyenne was incarcerated and appeared via video conference. The trial court granted the agency temporary custody of X.G.

{¶9} On November 9, 2023, the agency filed a motion for permanent custody alleging that X.G. cannot be placed with either parent within a reasonable period of time and should not be placed with either parent. Specifically, the motion alleges that Brendon has abandoned X.G., has demonstrated a lack of commitment toward X.G., and has been unwilling to provide for X.G.'s basic needs. The motion further states that Cheyenne and Brendon previously lost permanent custody of X.G.'s older sibling, V.G. (born in 2018), and that it is in X.G.'s best interest that permanent custody be granted to the agency.

---

[2] Cheyenne was given credit for 38 days served in jail from January 24, 2023 to March 2, 2023, and an additional 38 days for good-time credit.

{¶10} Throughout the pendency of this case, the GAL filed multiple reports and ultimately recommended that permanent custody of X.G. be granted to the agency. Moreover, the agency filed a case plan and amendments, as well as semi-annual reviews, during this case.

{¶11} A final hearing on the permanent-custody motion was held on March 1, 7-8, 2024. Then, on August 13, 2024, the trial court issued a judgment entry granting the agency's motion for permanent custody of X.G. The trial court found that the agency established by clear and convincing evidence that X.G. cannot be safely placed in the care of either parent within a reasonable amount of time or should not be placed with either parent. The trial court further found that the evidence clearly and convincingly demonstrated that granting permanent custody of X.G. to the agency is in X.G.'s best interest.

{¶12} On August 26, 2024, Cheyenne filed her notice of appeal, raising three assignments of error. Brendon filed his notice of appeal on September 6, 2024, raising a single assignment of error. For ease of discussion, we will consider Cheyenne's first and second assignments of error and Brendon's sole assignment of error together, followed by Cheyenne's third assignment of error.

### Cheyenne's First Assignment of Error

**The Trial Court's Decision Granting Permanent Custody Was Against The Manifest Weight And Sufficiency Of The Evidence.**

**Cheyenne's Second Assignment of Error**

**The Trial Court Erred When It Determined That The Only Way To Establish Permanency For The Minor Child Was To Grant Permanent Custody Ignoring The Mandate That When A Kinship Placement Is Identified And Available For Legal Custody Which Was The Resolution That Was In The Best Interest Of The Minor Child.**

**Brendon's Assignment of Error**

**It Was In The Best Interest Of The Child To Order Legal Custody To The Kinship Caregiver Where The Child Is Likely To Be Adopted Because Legal Custody Would Provide A Similar Level Of Permanency While Preserving Familial Relations And Offering The Court The Option Of Reunification In The Future Should It Find A Sufficient Change In Circumstances.**

{¶13} In her first and second assignments of error, Cheyenne argues that the trial court erred by granting permanent custody of X.G. to the agency. Specifically, she contends that the trial court's decision is against the manifest weight of the evidence since she demonstrated "over compliance with the case plan" and that "she was ready" on the day of the final hearing "to have [X.G.] come home." (Cheyenne's Brief at 12). Cheyenne further argues that the trial court's decision is not in X.G.'s best interest because "a kinship placement could have been explored and determined, giving legal custody to someone to avoid the ultimate destruction of the parental rights." (*Id.* at 19).

{¶14} In his sole assignment of error, Brendon acknowledges that he was not in a position to take custody of X.G. at the time of the final hearing. He argues that the trial court erred by not ordering legal custody to a kinship caregiver because it

"preserve[s] the familial relationship" as opposed to permanent custody. (Brendon's Brief at 11).

*Standard of Review*

{¶15} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The rights and interests of a natural parent, however, are not absolute. *In re Thomas*, 2003-Ohio-5885, ¶ 7 (3d Dist.). These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 2003-Ohio-1269, ¶ 6 (3d Dist.).

{¶16} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. In particular, R.C. 2151.414 establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody. First, the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies. Second, the trial court must find that permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D). *In re G.J.*, 2021-Ohio-3786, ¶ 11 (3d Dist.).

{¶17} As to the first part of the permanent-custody test, R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and *the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.*

(Emphasis added.) R.C. 2151.414(B)(1)(a). When analyzing the factor under R.C. 2151.414(B)(1)(a), the trial court must determine if one or more of the factors set forth in R.C. 2151.414(E) exist as to each of the child's parents. If one or more of the factors exist, then the trial court must enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. *In re R.R.*, 2021-Ohio-1620, ¶ 66 (3d Dist.). In pertinent part, R.C. 2151.414(E) states,

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of

-8-

the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

. . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

. . .

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

. . .

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶18} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis in original.) *In re A.F.*, 2012-Ohio-1137, ¶ 55 (3d

Dist.). Thus, the second part of the permanent-custody test mandates that the trial court

> shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶19} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re A.E.*, 2014-Ohio-4540, ¶ 28 (3d Dist.) ("A court's decision to terminate parental rights will not be overturned as against the

manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established.").

{¶20} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶21} In this case, the trial court determined that X.G. cannot be placed with either parent within a reasonable period of time or should not be placed with either parent under R.C. 2151.414(B)(1)(a). The trial court made this determination after considering the factors set forth in R.C. 2151.414(E) and finding that the following exists as to each of X.G.'s parent:

> [Brendon] has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so or by other actions showing an unwillingness to provide for an adequate permanent home for the child. R.C. 2151.414(E)(4)[.] [Brendon] has abandoned the child. R.C. 2151.414(E)(10)[.] [Brendon] has been unwilling to provide for the child's basic needs and has had no contact with the child since April 2022 and has provided nothing for [X.G.'s] care and support. R.C. 2151.414(E)(14)[.] [A]nd *[Cheyenne] and [Brendon] have had their parental rights terminated with respect to a sibling of the child pursuant to this section R.C. 2151.414(E)(11)* . . . .

(Emphasis added.) (Doc. No. 222). Notably, the trial court found that neither parent—after having their parental rights involuntarily terminated with respect to X.G.'s older sibling—was able to resolve their issues during the almost two-year history of this case. "The unaddressed issues that attributed to the involuntary termination of their parental rights of their first child resurfaced and became the driving force in this case." (*Id.*).

{¶22} In her first assignment of error, Cheyenne argues that the trial court "clearly lost its way and created a manifest miscarriage of justice by granting permanent custody of [X.G.] to the [a]gency." (Cheyenne's Brief at 9). Cheyenne asserts that "[s]he met her burden of proving by clear and convincing evidence, that even though she involuntarily lost custody of one child, she could provide a legally secure placement and adequate care for the health, welfare, and safety of [X.G.]." (*Id.* at 15). We disagree.

{¶23} Multiple agency caseworkers testified at the final hearing and expressed their concerns regarding Cheyenne's substance abuse and inability to care for X.G. Testimony indicated that Cheyenne made some progress in addressing these concerns. For example, she had an apartment throughout the case. She also had food and clothing for X.G. She successfully completed parenting classes and obtained employment. Despite these successes, however, Cheyenne failed to maintain her sobriety for long periods of time and never progressed beyond

supervised visitation with X.G. *See In re M.B.*, 2016-Ohio-793, ¶ 56 (4th Dist.) (noting that "[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.").

{¶24} The record reveals that Cheyenne displayed poor judgment throughout this case which negatively impacted her ability to provide a legally secure permanent placement and adequate care for X.G.'s health, welfare, and safety. In addition to testing positive for methamphetamine and fentanyl in November of 2021, Cheyenne tested positive for cocaine on March 1, 2022. She also tested positive for alcohol on January 20, 2023. Thereafter, on April 7, 2023, the trial court ordered Cheyenne to submit to random drug screening. For a period of time, she did not participate in the agency's call-in program. After she engaged in the program, Cheyenne was screened 15 times and tested positive for alcohol on three occasions—October 4, 2023; January 4, 2024; and January 22, 2024.

{¶25} Further, testimonial and documentary evidence established that Cheyenne engaged in criminal activity during this case. In March of 2023, she was convicted of felony drug possession in Indiana and sentenced to jail. She was also charged with felony theft in Union County, Ohio, and illegal conveyance of drugs into a detention facility in Champaign County, Ohio. At the time of these offenses, Cheyenne was on community control out of Logan County for a 2019 conviction of

possession of heroin. The felony charges in Indiana and Ohio resulted in a violation of community control.

{¶26} The GAL testified at the final hearing and expressed concerns regarding Cheyenne's substance abuse, criminal activity, mental health struggles, and history of dishonesty. The GAL testified that these ongoing concerns negatively impacted her ability to provide for the basic needs of X.G., and that granting the agency permanent custody is in X.G.'s best interest.

{¶27} Additionally, the trial court considered the factors set forth in R.C. 2151.414(D)(1) and determined that it is in X.G.'s best interest to grant the agency's motion for permanent custody. Specifically, the trial court found that X.G. has been continuously removed from Cheyenne's home since X.G. was adjudicated as a dependent child in March of 2022; X.G. is bonded to Denyse; Cheyenne's relationship with X.G. is very limited due to her unaddressed issues; X.G's relationship with Brendon is practically nonexistent; X.G. is in need of legally secure placement that Cheyenne and Brendon are unwilling or unable to provide; and the GAL recommended that the agency be granted permanent custody of X.G.

{¶28} After considering all of the evidence in the record, we conclude that clear and convincing evidence supports the trial court's determinations under R.C. 2151.414 and the two-part test it was required to apply in granting permanent custody of X.G. to the agency. That is, clear and convincing evidence supports the finding that X.G. cannot be placed with either parent within a reasonable period of

time or should not be placed with either parent, and that it was in X.G.'s best interest that the agency be granted permanent custody. We further conclude that the trial court's decision to grant permanent custody of X.G. to the agency is not against the manifest weight of the evidence. Consequently, the trial court did not err by granting permanent custody of X.G. to the agency.

{¶29} Nonetheless, Cheyenne and Brendon argue that the trial court erred by terminating their parental rights. In Cheyenne's second assignment of error and Brendon's sole assignment of error, they argue that it was in X.G.'s best interest for the trial court to consider alternate placement options before terminating their parental rights. In particular, Cheyenne contends that viable placement options existed with either the maternal grandmother or Denyse.

{¶30} We have stated previously that R.C. 2151.414 "reveals no requirement that the trial court favor alternate placement over awarding permanent custody." *In re J.R.*, 2009-Ohio-4113, ¶ 21 (3d Dist.). At the time of the final hearing in this case, there was no alternate placement motion pending for the trial court's consideration. Even though Denyse filed a statement of understanding on March 7, 2024, no motion for legal custody was ever filed. Moreover, the record demonstrates that that the agency did not support placement with the maternal grandmother due, in part, to her health issues and the allegations of domestic violence in her home. Furthermore, the GAL testified that granting permanent custody to the agency was in X.G.'s best interest. When asked if legal custody could

achieve the permanency goal, the GAL responded that he would have considered a motion for legal custody—if one had been filed.

**{¶31}** Based on the foregoing, we conclude that the trial court did not err by ruling on the agency's motion for permanent custody of X.G. directly before it, particularly when the trial court's judgment was supported by clear and convincing evidence.

**{¶32}** Cheyenne's first and second assignments of error and Brendon's sole assignment of error are overruled.

### Third Assignment of Error

**The Trial Court Erred When It Overruled Multiple Objections Made By Mother During The Agency's Case-In-Chief And The Allowance Of A Rebuttal Witness By The Agency.**

**{¶33}** In her third assignment of error, Cheyenne argues that the trial court abused its discretion by admitting certain evidence at the final hearing. Specifically, she argues that the trial court erred by (1) permitting an agency caseworker to testify regarding the different cutoff levels between urine drug screens and oral screens; (2) admitting evidence of Cheyenne's prior case with the agency wherein her parental rights were involuntarily terminated as to X.G.'s older sibling; and (3) allowing the agency to call a rebuttal witness.

*Standard of Review*

**{¶34}** The admission of evidence is a matter within the sound discretion of the trial court. *In re B.R.*, 2025-Ohio-599, ¶ 12 (3d Dist.). A reviewing court will

not disturb a trial court's evidentiary rulings absent a finding that the trial court abused its discretion. *Id.* An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶35} As to the first evidentiary ruling, an agency caseworker testified that Cheyenne tested positive for cocaine on March 1, 2022. On cross examination, the caseworker acknowledged that Cheyenne also tested negative for cocaine with urine screens administered that same day by two different providers. The caseworker testified that he was not concerned about the different test results. On redirect examination, the caseworker was asked to explain why results from urine screens may differ from oral screens. Over the objection of Cheyenne's trial counsel—and after laying a proper foundation, the caseworker testified that urine and oral screens have different cutoff levels and "urine is generally a higher cutoff than what an oral screen is." (Mar. 1, 2024 Tr. at 62). The caseworker further testified that the agency uses oral screens.

{¶36} We agree with the trial court's ruling that the caseworker's testimony was based on his general knowledge and experience. It was not testimony that required the caseworker to be qualified as an expert witness and, therefore, was not objectionable on that basis. *See* Evid.R. 702. Moreover, the agency presented a sufficient foundation for the caseworker's testimony. The caseworker testified that

he has eight years of experience at the agency and has completed thousands of drug screens. The caseworker further testified that he has reviewed the results of all drug screens. "Every single drug screen that I have either given or a provider has given to my client I have seen." (Mar. 1, 2024 Tr. at 61). Thus, the trial court did not abuse its discretion by allowing the caseworker to testify about the different cutoff levels between urine drug screens and oral screens.

{¶37} Turning to the second evidentiary ruling, Cheyenne argues that the trial court abused its discretion by admitting evidence of her prior case with the agency. Specifically, she argues that "anything that occurred prior to the current case" is unduly prejudicial and should have been limited to a certified copy of the judgment entry granting permanent custody of X.G.'s older sibling to the agency. (Cheyenne's Brief at 22). We disagree.

{¶38} In this case, the agency sought permanent custody of X.G. on the basis that X.G. cannot be placed with either parent within a reasonable period of time or should not be placed with either parent due, in part, to Cheyenne's parental rights having been involuntarily terminated with respect to X.G.'s older sibling. Therefore, under the two-part test set forth in R.C. 2151.414, the trial court was required to determine if Cheyenne had overcome the issues that led to the involuntary termination of her parental rights in the prior case. *See In re M.J.*, 2024-Ohio-1261, ¶ 12-14 (9th Dist.) (concluding that evidence of mother's past cases was directly relevant to both parts of the permanent-custody test and the trial court's

consideration of such evidence was not precluded by the plain language of R.C. 2151.414(E)(11)). Accordingly, the trial court did not abuse its discretion by admitting evidence of Cheyenne's prior case with the agency.

**{¶39}** With respect to the final evidentiary issue, Cheyenne argues that the trial court erred by allowing the agency to call a rebuttal witness. According to Cheyenne, this testimony should have been presented in the agency's case in chief because "no new facts" were introduced by her during her own testimony. (Cheyenne's Brief at 21). Since Cheyenne did not object to the agency calling a rebuttal witness in the trial court, she has waived all but plain error. *In re B.R.*, 2025-Ohio-599, at ¶ 13 (3d Dist.). "A finding of plain error is strictly limited, extremely rare, and occurs only in exceptional circumstances." *In re M.G.*, 2023-Ohio-1316, ¶ 34 (12th Dist.).

**{¶40}** The purpose of calling a rebuttal witness is to "explain, refute, or disprove new facts introduced into evidence by the adverse party." *State v. McNeill*, 83 Ohio St.3d 438, 446 (1998). For this reason, the testimony of a rebuttal witness "becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *Id.*

**{¶41}** Here, Cheyenne testified on direct that she reported concerns of possible abuse and/or neglect of X.G. while in the care of kinship provider Denyse. On cross examination by the GAL, Cheyenne stated that she was never notified of the agency's actions regarding her reported concerns. In response, the agency called

an intake supervisor to testify as a rebuttal witness. The supervisor testified that she is the "screener" for all reports of suspected abuse and neglect that come to the agency. (Mar. 8, 2024 Tr. at 589). The supervisor further testified that she screened three separate reports in October of 2023 regarding possible abuse and neglect of X.G. According to the supervisor, the reports were "screened out" due to lack of information and no further investigation was conducted by the agency. (*Id.* at 591).

{¶42} Based on the foregoing, we conclude that the trial court did not abuse its discretion by allowing the agency to call a rebuttal witness. Since Cheyenne testified that she was never notified of the agency's actions regarding her reported concerns, the testimony of the rebuttal witness explained how the agency handled the reports. Consequently, it was not error, let alone plain error, for the trial court to allow the agency to call a rebuttal witness to testify at the final hearing.

{¶43} Cheyenne's third assignment of error is overruled.

{¶44} Having found no error prejudicial in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 8-24-42

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed equally to Appellants for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge


_____
John R. Willamowski, Judge

DATED:
/hls

-21-